IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
FORT SMITH DIVISION

JANET CUMMINGS; EMILIA
MARTINEZ; VICTOR PIERINI;
and LAUREL RINGUIS                                                              PLAINTIFFS

v.                                       No. 2:14-CV-02090

BOST, INC., d/b/a BOST                                                           DEFENDANT

**OPINION AND ORDER**

Before the Court are Defendant Bost, Inc.'s ("Bost") motion for summary judgment (Doc. 94), Plaintiffs Janet Cummings, Emilia Martinez, Victor Pierini, and Laurel Ringuis's response (Doc. 97), Bost's reply (Doc. 99), and the parties' supporting documents. Also before the Court is Plaintiffs' cross-motion for partial summary judgment (Doc. 100), Bost's response (Doc. 103), Plaintiffs' reply (Doc. 106), and the parties' supporting documents as to that motion. Plaintiffs filed a supplement to their motion (Doc. 109) to which Bost responded (Doc. 110). For the following reasons, Bost's motion for summary judgment (Doc. 94) will be GRANTED IN PART, and Plaintiffs' motion for partial summary judgment (Doc. 100) will be DENIED.

**I.     Background**

Bost is a private, not-for-profit corporation that provides care to disabled persons throughout Arkansas. Plaintiffs were employed by Bost as caregivers for Bost clients who lived in the Plaintiffs' homes. Plaintiffs' amended complaint (Doc. 90) was brought under the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 201, et. seq., and the Arkansas Minimum Wage Act ("AMWA"), Ark. Code Ann. § 11-4-201, et. seq., seeking a declaratory judgment and damages for Bost's alleged failure to pay Plaintiffs overtime compensation for the time in excess of forty hours per week during which Plaintiffs cared for Bost clients in Plaintiffs' homes.

Bost's motion for summary judgment contends that no overtime compensation was owed because Plaintiffs were exempt employees under the companionship services exemption to the FLSA and a similar exemption under the AMWA. In their cross-motion, Plaintiffs seek partial summary judgment on the issue of whether the companionship services exemption applies.

## II.     Legal Standard

In determining whether summary judgment is appropriate, the burden is on the moving party to establish both the absence of a genuine dispute of material fact and that it is entitled to judgment as a matter of law. *See* Fed. R. Civ. P. 56; *Nat'l Bank of Commerce of El Dorado, Ark. v. Dow Chem. Co.*, 165 F.3d 602 (8th Cir. 1999). The same standard applies where, as here, the parties file cross-motions for summary judgment on an issue. Each motion should be reviewed in its own right, with each side, respectively, "entitled to the benefit of all inferences favorable to them which might reasonably be drawn from the record." *Wermager v. Cormorant Twp. Bd.*, 716 F.2d 1211, 1214 (8th Cir. 1983); *see also Canada v. Union Elec. Co.*, 135 F.3d 1211, 1212-13 (8th Cir. 1998). In order for there to be a genuine issue of material fact, the evidence must be "such that a reasonable jury could return a verdict for the nonmoving party." *Allison v. Flexway Trucking, Inc.*, 28 F.3d 64, 66 (8th Cir. 1994) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)). Once the movant has met its burden, the nonmovant must present specific facts showing a genuine issue of material fact for trial. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). To show a genuine issue of material fact, the nonmovant must produce evidence "such that a reasonable jury could return a verdict for the [nonmovant]." *Allison*, 28 F.3d at 66–67 (quoting *Anderson*, 477 U.S. at 248).

**III.   Discussion**

   **A.   The Companionship Services Exemption**

The FLSA requires payment of overtime compensation of at least time and a half for time worked over forty hours per week. 29 U.S.C. § 207. However, the FLSA contains a companionship services exemption from overtime pay for "any employee employed in domestic service employment to provide companionship services for individuals who (because of age or infirmity) are unable to care for themselves (as such terms are defined and delimited by regulations of the Secretary [of Labor])." 29 U.S.C. § 213(a)(15). Plaintiffs have been employed by Bost for various periods spanning from at least 2000 to the present. The regulations defining "companionship services" were substantially amended in 2015. The parties' cross-motions consider only the regulations that were in place before 2015.

"Domestic service employment" is defined as "services of a household nature performed by an employee in or about a private home (permanent or temporary)." 29 C.F.R. § 552.3 (2015).[1] In *Fezard v. United Cerebral Palsy of Central Arkansas,* 809 F.3d 1006, 1010 (8th Cir. 2016), the Eighth Circuit held that where an employee provided care to clients in the employee's residence, and the nonprofit services-provider employer did not own or exert control over the home, it qualified as a "private home" such that the employees were engaged in domestic service employment. Based on this ruling, "for summary judgment purposes Plaintiffs do not dispute that they worked in their clients' private homes as 'domestic service' employees." (Doc. 97, pp. 3-4).

---

[1] For purposes of this case, the definition of "domestic service employment" before 2015 was substantially the same.

3

The decisive issue in the present motions is whether the "companionship services" prong of the exemption applies. The pre-2015 regulations defined "companionship services" in relevant part as:

> those services which provide fellowship, care, and protection for a person who, because of advanced age or physical or mental infirmity, cannot care for his or her own needs. Such services may include household work related to the care of the aged or infirm person such as meal preparation, bed making, washing of clothes, and other similar services. They may also include the performance of general household work: Provided, however, that such work is incidental, i.e., does not exceed 20 percent of the total weekly hours worked.

29 C.F.R. § 552.6 (1975). Bost argues that under this definition of "companionship services," Plaintiffs were exempt employees because they provided attention and care to disabled clients. Plaintiffs agree that they provided attention and care to the clients, but argue that Bost cannot show that Plaintiffs performed only incidental general household work, so the exemption does not apply.

Exemptions to the FLSA are "narrowly construed in order to further Congress' goal of providing broad federal employment protection." *Spinden v. GS Roofing Prods. Co.,* 94 F.3d 421, 426 (8th Cir. 1996) (quotation and citation omitted). Bost bears the burden of "prov[ing] that this exemption applies by demonstrating that [its] employees fit plainly and unmistakably within the exemption's terms and spirit." *Id.* Plaintiffs contend that this burden requires Bost to show that Plaintiffs did not spend more than 20-percent of their total weekly hours engaged in general household work, without Plaintiffs producing any evidence to the contrary.

Not until the Eighth Circuit handed down its decision in *Fezard* and Bost filed its motion for summary judgment did Plaintiffs bring up any general household work done while employed. The amended complaint simply provides that "Plaintiff brings this action under the Fair Labor Standards Act … as a result of Defendant's failure to pay Plaintiff overtime compensation for the hours in excess of forty hours in a single week that they were/are made to work in their homes."

4

(Doc. 90, ¶ 4). It goes on to state that "Plaintiff's primary duties as a direct care worker were to provide attention and care to disabled persons in Plaintiff's own home." (*Id.*, ¶ 31). It appears to the Court that until the Eight Circuit reached its decision in *Fezard*, 809 F.3d at 1010, Plaintiffs' claims for relief depended on the "domestic service employment" issue in the companionship services exemption. The Eighth Circuit ultimately decided against the position Plaintiffs pressed. Plaintiffs have now changed course and, for the first time, argue that they did general household work and that Bost cannot meet its burden to prove that the companionship services exemption applies. Plaintiffs raise this issue without making any direct claim that they actually spent more than 20-percent of their total weekly hours performing general household work.

### 1. Plaintiffs' Motion for Partial Summary Judgment

Reviewing each motion in its own right, the Court will first address Plaintiffs' motion for partial summary judgment. (Doc. 100). In support of their motion, Plaintiffs state that where the ultimate burden of proof resides with the nonmoving party, the moving party's initial burden of production "may be discharged by 'showing'—that is, pointing out to the district court—that there is an absence of evidence to support the nonmoving party's case." *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986). Yet, as Justice White pointed out in his concurrence in *Celotex,* which provided the decisive fifth vote in the case, these guidelines should not be taken out of context. "It is not enough to move for summary judgment without supporting the motion in any way or with a conclusory assertion that the [nonmovant] has no evidence to prove his case." *Celotex,* 477 U.S. at 328 (White, J., concurring). "[E]ven when the non-movant bears the burden of proof at trial, simply filing a summary judgment motion does not immediately compel the party opposing the motion to come forward with evidence demonstrating material issues of fact as to every element of its case." *Handeen v. Lemaire*, 112 F.3d 1339, 1346 (8th Cir. 1997) (quoting

*Ashe v. Corley,* 992 F.2d 540, 543 (5th Cir.1993)). "Any contrary rule would be fundamentally unfair and would permit a [movant], with very little effort on its own part, to place upon a [non-movant] an unwarranted responsibility to substantiate each element of its case or face summary dismissal." *Handeen*, 112 F.3d at 1346–47. Here, Plaintiffs point to their own depositions in support of their position that Bost cannot meet its exclusive burden on the applicability of the companionship services exemption. (Doc. 102, pp. 8-10). On the other hand, there is significant evidence that Bost has produced showing that Plaintiffs were not hired to do general housework, but only to provide care. (Doc. 94, Exs. 1-13; Doc. 103, Exs. 1-5).

It would be "fundamentally unfair" to award Plaintiffs judgment on this issue—and thus potentially entitle them to overtime wages for general household work that they did not allege and cannot prove they provided—simply because they point out in their motion that Bost has the burden on the exemption and because they think that Bost cannot meet that burden based on Plaintiffs' own depositions. Additionally, because Plaintiffs bear some burden of production on this issue and on Bost's motion for summary judgment, and they cannot meet that burden, Plaintiffs have not shown that they are entitled to judgment as a matter of law, and their motion will be denied.

### 2. **Bost's Motion for Summary Judgment**

In responding to Bost's motion for summary judgment, Plaintiffs' burden as the nonmovant is more substantial than their burden on their own motion. As Bost has produced evidence that it is entitled to the companionship services exemption, Plaintiffs must produce evidence sufficient to show that there is a genuine issue of material fact. Plaintiffs do not meet this burden, having affirmatively stated that they possess no evidence on the matter. (Doc. 102, p. 2). Bost's motion will thus be granted for the time period in which the former regulations were applicable.

Plaintiffs' argument on this issue rests entirely on their insistence that Bost carries the entire burden of production and proof on the companionship services exemption and the general household work exception to it. Yet, neither of the cases cited by Plaintiffs in support of their position presents a scenario where an employee opposing the exemption was able to rely solely on the employer's burden of proof, without any claim that the employee actually spent more than 20-percent of their work hours per week on general household work, in opposing application of the companionship services exemption.[2] The Court believes that some such claim is necessary because arguing that an employer cannot prove its employees did not spend more than 20-percent of their work hours on general household duties implicitly requires making a claim that they actually did so. *See, e.g.,* Doc. 97, p. 7 ("If Cummings spent as much time performing household work in all common areas of the home combined as she spent in Bost's client's room alone—a virtual certainty—then her household work exceeded the twenty percent threshold by a wide margin."); *Id*. at 9 ("If 21 of those [87] hours were devoted to general household work, that would amount to just over 24% of Ringuis's work time (21 ÷ 87), so that the Companionship Services Exemption could not apply.").

In *Fowler v. Incor*, 279 F. App'x 590, 597 (10th Cir. 2008), an unpublished Tenth Circuit opinion relied almost exclusively upon by Plaintiffs, each Plaintiff testified as to the amount of time they had spent doing general household work during their employment. In contrast, Plaintiffs

---

[2] One of the two cases cited by Plaintiffs on this point is an unpublished opinion from the Southern District of Indiana denying class certification. *Johnson v. Bridges of Ind*., 2010 U.S. Dist. LEXIS 103696, *6-7 (S.D. Ind. Sept. 28, 2010). In dicta, the court there said only that "it *appears likely* to the Court that the Defendants will" bear the burden of proving the general household exemption does not apply, before determining that "an individualized inquiry into the work performed by each [employee] during each work week will be necessary." *Id*. (emphasis added). Due to its limited relevance to the present motions, the Court will not consider the case any further.

here freely admit they lack any evidence in support of their position. According to Plaintiffs' counsel, "there is simply no evidence in the record that could establish whether the [20-percent exception to the exemption] applies because no Party kept the necessary records of how Plaintiffs spent their work time." [3] (Doc. 102, p. 2). Other cases in which the general household work exception has been at issue have also involved employees alleging they met the 20-percent threshold for applying the exception. *See, e.g., Herrera v. Council for Human Servs. Home Care Servs. Corp.,* 2008 WL 4104025 (S.D.N.Y. Aug. 28, 2008) (plaintiff asserted in brief that she spent more than 20-percent of her total work hours performing general household work); *Torres v. Ridgewood Bushwick Senior Citizens Homecare Council Inc.*, 2009 WL 1086935, at *3 (E.D.N.Y. Apr. 22, 2009) (where plaintiffs' amended complaint contained "the broad allegation" that plaintiffs spent more than 20-percent of their time doing general household work); *Terwilliger v. Home of Hope, Inc.*, 21 F. Supp. 2d 1294, 1301 (N.D. Okla. 1998) (Plaintiffs claimed they met the 20-percent threshold and submitted affidavits stating they "performed general household work such as cleaning and grocery shopping at least twenty percent of the hours they worked each week.").

Additionally, Plaintiffs cite to *Fowler*, 279 F. App'x at 597, in support of their proposition that there is no general household work exception to the companionship services exemption and the 20-percent issue is merely a part of the analysis in determining whether the companionship services exemption applies. Therefore, they argue, the burden remains with Bost on the 20-percent

---

[3] Depositions of three of the Plaintiffs support this statement. Plaintiff Emilia Martinez stated that she "never managed the time" she spent on general household work. (Doc. 94, Ex. 5-160). When pressed about time spent doing general household work, Plaintiff Laurel Ringuis claimed that "it's too hard to come up with a definite number." (Doc. 94, Ex. 7-172). When asked if the amount of time Plaintiff Victor Pierini devoted to general household work was as much as 20-percent, Pierini stated "I have no idea." (Doc. 94, Ex. 12-131).

8

issue since it is just a part of the larger exemption's definition. Having reviewed the unpublished Tenth Circuit opinion, the Court finds it to be unpersuasive on this particular point. *See Clopton v. TSS*, 2011 WL 346478, at *7 (D. Kan. Feb. 2, 2011) (in a case after *Fowler*, a Tenth Circuit district court called the 20-percent rule "an exception to the companionship services exemption"). This Court joins those that have instead found the general household work provision to be an exception to the exemption. *See, e.g., Foster v. Americare Healthcare Servs., Inc.*, 150 F. Supp. 3d 868, 878 (S.D. Ohio 2015); *McCune v. Oregon Sr. Servs. Div.*, 894 F.2d 1107, 1110 (9th Cir. 1990); *Toth v. Green River Reg'l Mental Health/Mental Retardation Bd., Inc.*, 753 F. Supp. 216, 217 (W.D. Ky. 1989), *aff'd sub nom. Hengesback v. Green River Reg'l Mental Health/Mental Retardation Bd., Inc.*, 985 F.2d 560 (6th Cir. 1993)

In doing so, the Court holds that Plaintiffs do have a burden, albeit a low one, to show that they qualify under the general household work exception to the companionship services exemption. When an employee brings suit under the FLSA for unpaid overtime compensation, the Supreme Court has found that the employee "has the burden of proving that he performed work for which he was not properly compensated." *Anderson v. Mt. Clemens Pottery Co.*, 328 U.S. 680, 687–88 (1946), *superseded by statute on other grounds*, 29 U.S.C. § 254(a). Of particular relevance to the current dispute, the Supreme Court directed:

> But where the employer's records are inaccurate or inadequate and the employee cannot offer convincing substitutes a more difficult problem arises.... In such a situation we hold that *an employee has carried out his burden if he proves that he has in fact performed work for which he was improperly compensated and if he produces sufficient evidence to show the amount and extent of that work as a matter of just and reasonable inference.* The burden then shifts to the employer to come forward with evidence of the precise amount of work performed or with evidence to negative the reasonableness of the inference to be drawn from the employee's evidence.

*Id*. (emphasis added). The only dispute as to records in the present action are those reflecting on general household work performed by the employees. Plaintiffs state that neither party kept the records on this point. (Doc. 102, p. 2). Bost argues in defense that such records do not exist because Plaintiffs were not hired to perform those duties, and indeed none of the job descriptions include anything that could be construed as requiring general household work. (Doc. 103, Exs. 1-4). The parties agree that the record as to general household work is incomplete, so the Court finds that Plaintiff-employees must first prove that for these particular tasks they "in fact performed work for which [they] were improperly compensated" and produce "sufficient evidence to show the amount and extent of that work." *Anderson*, 328 U.S. at 687–88. The Court will not allow Plaintiffs to recover for work they cannot first prove they completed. Applying this burden shifting analysis, the Sixth Circuit first found that "[t]he evidence is sufficient to prove that Defendants' employees were undercompensated" before moving on to the defendant's burden. *Herman v. Palo Grp. Foster Home, Inc*., 183 F.3d 468, 473 (6th Cir. 1999).

Before shifting the burden to Bost, Plaintiffs must first provide some evidence to meet their burden of showing that they spent more than 20-percent of a work week on general household work. *See Jones v. Elect Home Care, LLC*, 2015 WL 7709425, at *4 (W.D. Tenn. July 1, 2015) (case was dismissed where the plaintiff did not "offer any specifics as to how many hours each week were spent doing general household work beyond the general more than twenty percent" or "in any way describe what tasks she completed that would qualify as general household work"); *Herrera v. Council for Human Servs. Home Care Servs. Corp.,* 2008 WL 4104025 (S.D.N.Y. Aug. 28, 2008) (granting motion to dismiss where plaintiff asserted in brief that she spent more than 20-percent of her total work hours performing "general household work" but this "bare allegation" was unsupported by allegations in the complaint). However, Plaintiffs have produced no evidence

to support this burden, instead relying entirely on the employer's more stringent burden in making their case. This does not meet Plaintiffs' burden as they have produced no evidence from which a reasonable jury could find that their work fit within the exception to the exemption. *Foster*, 150 F. Supp. 3d at 878 (granting the defendant summary judgment where the companionship services exemption applied upon finding that, as to the general household work exception, "Plaintiff has not been able to show that she has 'in fact performed work for which [s]he was improperly compensated' in this case.") (quoting *Anderson*, 328 U.S. at 687–88). The Court finds that Plaintiffs "have not presented specific facts sufficient enough to support their argument that they spent twenty percent of their time doing general housework." *Toth*, 753 F. Supp. at 217 (citing *Celotex,* 477 U.S. 317). Plaintiffs' failure to meet their limited burden of proof will result in summary judgment for Bost as to the applicability of the former companionship services exemption to the FLSA.

In regards to Plaintiffs' claims under the AMWA, Bost states in its motion for summary judgment that a companionship services exemption similarly applies to the state law claim. (Doc. 95, p. 10). The AMWA broadly defines an employee, but exempts from this definition one who is "employed on a casual basis in domestic service employment to provide… [c]ompanionship services for individuals who are unable to care for themselves because of age or infirmity." Ark. Code Ann. § 11-4-203(3)(O)(ii). "The FLSA and the AMWA impose similar minimum wage and overtime requirements on employers and, in cases involving claims brought under both acts, the courts have concluded that their parallel provisions should be interpreted in the same manner." *Carter v. Primary Home Care of Hot Springs, Inc.*, 2015 WL 11120563, at *2 (W.D. Ark. May 14, 2015). Additionally, the Arkansas Department of Labor's regulations concerning AMWA coverage and exemptions specifically state that 29 C.F.R. Part 552 should be

11

used to interpret exemptions and define the relevant terms contained within those exemptions. Ark. Admin. Code § 010.14-106(B)(15). Thus, the Court relies on its analysis of the companionship services exemption to the FLSA in finding that Bost's motion for summary judgment as to Plaintiffs' claims prior to 2015 brought under the AMWA should also be granted.

### B. Applicability of the Current Regulations

The parties' motions do not address the substance of the current regulations as they relate to the companionship services exemption. Instead, Bost argues that the current regulations on the subject did not take effect until November 12, 2015, so that they are inappropriate for consideration in the present motions.[4] Yet, in their supplement to the motion for partial summary judgment (Doc. 109), Plaintiffs contend that the regulations took effect on January 1, 2015. The Court agrees, and will thus deny summary judgment for Bost on Plaintiffs' claims following December 31, 2014.

In October 2013, the Department of Labor ("DOL") created a Final Rule amending the regulations as they relate to "companionship services" with an effective date of January 1, 2015. *See* Application of the Fair Labor Standards Act to Domestic Service, 78 Fed. Reg. 60454, 60455 (Oct. 1, 2013). However, the United States District Court for the District of Columbia concluded that the DOL exceeded its rule-making authority in eliminating the FLSA exemption for home health workers and vacated the rule. *See Home Care Assoc. of Am. v. Weil*, 78 F. Supp. 3d 123 (D.D.C. 2015). On August 21, 2015, the Court of Appeals for the District of Columbia reversed

---

[4] Bost asserts in its brief in support of its motion for summary judgment: "As of November 14, 2015, all Bost RHAs were paid hourly and not under the Companionship Exemption. (Exhibit 13, Affidavit of Laura Golden). None of the plaintiffs herein were paid via daily rates after the new regulations became effective. Therefore, plaintiffs' claims brought in this lawsuit are appropriately analyzed under the older 29 C.F.R. § 552.6 cited in the Brief above which had been in place from 1975 until November 12, 2015." (Doc. 95, p. 7 n. 2).

the district court's vacatur. *See Home Care Assoc. of Am. v. Weil,* 799 F.3d 1084, 1097 (D.C. Cir. 2015). Following that decision, the DOL issued guidance stating that it would not institute enforcement proceedings for violations of the amended Final Rule until 30 days after the Court of Appeals issued a mandate making its opinion effective, which the appellate court subsequently did on October 13, 2015. *See* 80 Fed. Reg. 55029 (Sept. 14, 2015). The DOL then indicated that it would not bring enforcement actions for violations of the rule prior to November 12, 2015. *See* Application of the Fair Labor Standards Act to Domestic Service: Dates of Previously Announced 30-Day Period of Non-Enforcement, 80 Fed. Reg. 65646 (Oct. 27, 2015).

While the decision of the DOL to avoid enforcing the new regulations until November 12, 2015 could be a reason for the Court to construe the amended Final Rule as effective on that date, *see Bangoy v. Total Homecare Solutions, LLC*, No. 1:15-cv- 573, 2015 U.S. Dist. LEXIS 177859 (S.D. Ohio, Dec. 21, 2015), the Court instead considers the Final Rule effective as of the date the DOL consistently maintained it would be—January 1, 2015. *See Lewis-Ramsey v. The Evangelical Lutheran Good Samaritan Soc'y*, Case No. 3:16-cv-26-RP-CFB, at 8 (S.D. Iowa September 21, 2016). The Court finds it contrary to general principles of fairness to allow Bost "to escape liability for nearly a year's worth of overtime wages based on a district court decision that was ultimately deemed to be error." *Id.* Bost argues that "retroactive application of the rule would place employer's like Bost, Inc. in an untenable position," (Doc. 110, pp. 5-6), but the Court finds that "judicial decisions are presumptively retroactive in their effect and operation." *Kinkead v. Humana, Inc.*, 2016 WL 3950737, at *3 (D. Conn. July 19, 2016).

The parties agree that Cummings left Bost in April 2012, Ringuis left Bost in May 2015, and both Pierini and Martinez were paid on an hourly basis until November 14, 2015. (Doc. 98, ¶¶ 137-139). As such, the former regulation applies in full to Cummings, and Bost is entitled to

13

complete summary judgment on her claim. As to the other three Plaintiffs, though, their claims remain for the period of 2015 in which they were employed by Bost and paid on an hourly basis.

**IV.     Conclusion**

IT IS THEREFORE ORDERED that Defendant Bost, Inc.'s motion for summary judgment (Doc. 94) is GRANTED IN PART.

Plaintiff Janet Cummings's claims are DISMISSED WITH PREJUDICE.

Plaintiffs Emilia Martinez, Victor Pierini, and Laurel Ringuis's claims before January 1, 2015 are also DISMISSED WITH PREJUDICE.

IT IS FURTHER ORDERED that Plaintiffs' motion for partial summary judgment as to the applicability of the companionship services exemption (Doc. 100) is DENIED.

IT IS SO ORDERED this 1st day of November, 2016.

/s/ P. K. Holmes, III
P.K. HOLMES, III
CHIEF U.S. DISTRICT JUDGE