IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
FORT SMITH DIVISION

EMILIA MARTINEZ; VICTOR PIERINI;
and LAUREL RINGUIS                                                                                      PLAINTIFFS

v.                                              No. 2:14-CV-02090

BOST, INC., d/b/a BOST                                                                              DEFENDANT

## OPINION AND ORDER

Before the Court is the parties' joint motion (Doc. 117) to approve their settlement agreement[1] and dismiss, filed pursuant to Federal Rule of Civil Procedure 41(a)(2).  Plaintiffs assert claims under the Federal Labor Standards Act ("FLSA"), 29 U.S.C. § 201, et. seq.  Plaintiffs also assert a claim under the Arkansas Minimum Wage Act ("AMWA"), Ark. Code Ann. § 11-4-201, et. seq.  The action was certified as a collective action and then decertified, leaving for resolution only the remaining Plaintiffs' individual claims.  The Court denied (Doc. 116) an earlier unopposed motion to dismiss the case.  At the Court's request, the settlement agreement had been submitted in camera for the Court's review.  The instant motion was filed to address concerns raised by the Court in denying the first motion to dismiss.  The Court has reviewed the joint motion, its exhibits, and the proposed settlement agreement, and GRANTS the joint motion to dismiss for the reasons set forth below.

Pursuant to Federal Rule of Civil Procedure 41(a)(2), the Court may dismiss an action based on the filing of a motion "on terms that the court considers proper."  In the case of an FLSA stipulated judgment, dismissal is proper when a settlement agreement is fair and reasonable.  In determining whether a settlement is fair and reasonable, factors the Court may consider include

---

[1] The Court has filed the agreement under seal on the docket.  (Doc. 118).

1

the stage of the litigation and the amount of discovery exchanged, the experience of counsel, the probability of success on the merits, any "overreaching" by the employer in the settlement negotiations, and whether the settlement was the product of an arm's length negotiations between the parties based on the merits of the case. *Carrillo v. Dandan Inc.*, 51 F. Supp. 3d 124, 132–33 (D.D.C. 2014) (taking into account the "totality of the circumstances" to determine the fairness of an FLSA settlement).

In denying the earlier motion, the Court noted that it lacked sufficient information to evaluate whether the settlement agreement is fair and equitable to all parties. In particular, the Court pointed to a lack of information regarding: the number of unpaid regular and overtime hours, or the amount of damages Plaintiffs believed they could recover for unpaid time; whether the agreed-upon amounts included liquidated damages or were simply compensation for back wages; the scope of discovery and the documents reviewed by Plaintiffs to evaluate their claim for unpaid wages; a broad release and waiver applicable to any and all of Plaintiffs' claims against Bost, not just those specifically related to the FLSA and AMWA wage claims that arise out of the instant lawsuit; an ambiguous and broad non-disparagement clause; and the agreement to pay Plaintiffs an attorneys' fee in the amount of $30,000, with no information regarding the fee arrangement between Plaintiffs and their attorneys or as to the amount of time expended on the case.

The instant motion sufficiently addresses each of the Court's concerns. The parties have supplied the Court with three separate spreadsheets (Docs. 117-1, 117-2, and 117-3) showing the number of overtime hours claimed and the maximum amount that Bost calculated it could possibly owe each Plaintiff for those claimed overtime hours following the Court's prior ruling (Doc. 111) which limited damages to those that occurred after January 1, 2015. The joint filing compares these totals to the amount each Plaintiff claimed he or she was owed, including liquidated damages.

(Doc. 117, ¶ 21).  Information provided by the parties also sheds light on the approximate number of documents provided by each party during discovery, the number of subpoenas issued and responsive documents, and the parties' extensive deposition practice.  This information indicates that the parties have engaged in substantial discovery into the merits of the action and have reached a settlement informed by experienced counsel who have analyzed the probable set of facts that would be found during any trial.  These supporting documents show that the settlement is a compromise of a bona fide dispute over uncompensated hours.

The parties provide that the waiver and release of all of Plaintiffs' claims was inserted due to a number of recent lawsuits filed against Bost by Plaintiffs' counsel.  They represent that the release applies to those claims that "[P]laintiffs might have against Bost as a result of their employment with Bost."  (Doc. 117, ¶ 37).  Yet, the agreement goes further than simply claims against Bost related to Plaintiffs' employment there, and includes "any and all claims… against Bost… as of the date of the Named Plaintiffs' execution of this Agreement… under the laws of any state, county, municipality or other governmental subdivision of the United States or any state…" (Doc. 118, p. 5-6).  While the Court finds this release to be quite broad, it understands that this language was inserted as a result of arms-length negotiating, which necessarily included Bost's concern for further litigation brought against it.  In light of this and the fact that only one of the Plaintiffs continues to work for Bost, the Court finds the waiver and release to be acceptable.

The non-disparagement clause also relates to ongoing litigation between Bost and former employees who are represented by Plaintiffs' counsel.  Bost represents that it does not want any of the Plaintiffs in this case "to assist in any way in the pending" state law case.[2]  (Doc. 117, ¶ 37).

_____

[2] The parties are, however, cautioned that this Court believes it is unlikely any such non-disparagement clause will prevent Plaintiffs from appearing in proceedings pursuant to a subpoena and truthfully testifying.

3

Finally, the parties have provided an affidavit (Doc. 117-7) and two invoices that contain detailed time logs (Docs. 117-4, 117-5) in support of their proposed attorneys' fees. While interpreting these invoices is complicated by the inclusion of work performed for a number of opt-in Plaintiffs who were subsequently dismissed and pursued their claims in state court,[3] the Court finds the attorneys' fee request to be reasonable. The parties have explained the approximate fees associated with Plaintiffs in each of the two lawsuits, and the state court action previously settled with reliance on this determination. (Doc. 117-6). The Court finds the proposed attorneys' fees, which are roughly one-quarter of the fees claimed as attributable to work on the instant case, to be reasonable. Furthermore, the parties have provided sufficient information for the Court to determine that the attorneys' fee will not be recovered at the expense of the plaintiffs' wage claims.

IT IS THEREFORE ORDERED that the proposed settlement agreement is approved in its entirety as fair and reasonable.

IT IS FURTHER ORDERED that the parties' joint motion to dismiss (Doc. 117) is GRANTED and, in light of the settlement agreement, this case is DISMISSED WITH PREJUDICE.

Judgment will be entered by separate order.

IT IS SO ORDERED this 13th day of March, 2017.

/s/ P. K. Holmes, III
P.K. HOLMES, III
CHIEF U.S. DISTRICT JUDGE

---

[3] At one point, this case involved more than 30 opt-in Plaintiffs while it was proceeding as a collective action. Most of those opt-in parties were voluntarily dismissed as part of Plaintiffs' second amended and substituted complaint (Doc. 90). They then pursued their claims in a state court action, but up until that point, hours logged on behalf of those individuals was included in the invoice for this case.

4